# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

BRANDON ROBERTS,               *

Plaintiff,                        *

v.                            *        Civil Action No. ELH-17-2306

WARDEN BOBBY P. SHEARIN,    *
WARDEN FRANK B. BISHOP, and
PRISON ADMINISTRATION AND OTHER  *
SUBORDINATES,
                         *
Defendants.
                         *

***

## MEMORANDUM OPINION

Plaintiff Brandon Roberts, the self-represented plaintiff, is a Maryland prisoner confined at North Branch Correctional Institution ("NBCI"). He initiated this civil rights action by filing a verified Complaint (ECF 1), pursuant to 42 U.S.C. §1983, against former Warden Bobby P. Shearin, former Warden Frank B. Bishop, Jr., and unidentified "Prison Administration and other Subordinates." The suit was supplemented with information in his response to a motion for more definite statement. ECF 43.[1]

Roberts lodges numerous allegations concerning his claim of violation of his civil rights. He asserts, *inter alia*, that his rights were violated after violence in the prison resulted in a lengthy lock-down, during which time he was subjected to an improper strip search at gun point under threat of "trained dogs." ECF 1 at 4. He also claims denial of food, and alleges that a "Phase System" was improperly implemented, which deprived him of privileges and programming, resulting in unfavorable treatment relative to other inmates. *Id.* at 5.

---

[1] Plaintiff has filed many other cases in this Court. *See*, *e.g.*, AW-09-1385; AW-10-3117; DKC-12-2474; RDB-13-1528; ELH-13-3765; ELH-15-1906; ELH-15-2854; ELH-17-2306; ELH-20-0340; ELH-20-1078; ELH-20-1843; and ELH-20-2791.

Defendants Bishop and Shearin have moved to dismiss or for summary judgment (ECF 47), supported by a memorandum (ECF 47-1) (collectively, the "Motion") and the Declaration of William Bohrer, Chief of Security at NBCI.  ECF 47-2. They assert that the Complaint is untimely. Defendants also argue that are entitled to dismissal based on qualified immunity, Eleventh Amendment immunity, respondeat superior liability, and because Roberts fails to establish a violation of his constitutional rights.  Defendants "Prison Administration and other Subordinates" were never served and have not appeared.

On September 15, 2020, the Court granted plaintiff's motion for an extension of time to respond to defendants' Motion.  ECF 50.  But, I set a due date of October 8, 2020. *Id.*  On October 14, 2020, the Court received Roberts's "Notice Of Intent To File A Late Response To Defendants' Motion to Dismiss or Alternatively Summary Judgment." ECF 51.  However, Roberts did not specify the proposed date of his response, nor has he yet responded to the Motion.

The Motion is ripe for disposition.  Upon review of the record, exhibits, and the applicable law, the Court deems a hearing unnecessary. *See* Local Rule 105.6. (D. Md. 2018). For reasons that follow, I shall dismiss the suit as to defendants Prison Administration and other Subordinates.  And, I shall otherwise construe the Motion as one for summary judgment and grant it in favor of defendants Shearin and Bishop.

## I.  Background

### A.  Procedural History

The Complaint was received by this Court on August 11, 2017.  ECF 1.  It was supposedly signed by Roberts more than three years earlier, on June 15, 2014.  *Id.* at 12.  But, the certificate of service reflects service on the Clerk of Court on August 6, 2017.  *Id.* at 13.

And, the motion to proceed in forma pauperis (ECF 2) was signed on August 5, 2017. *Id.* at 4. Roberts also filed a letter addressed to the Clerk of the Court, dated August 6, 2017. ECF 1-1.

The Complaint was signed by four other individuals: Roger Ervin, Eric Wheeler, Bruce Duncan, and Wayne Morris. ECF 1 at 12. But, only Roberts filed the motion for leave to proceed in forma pauperis. ECF 2.

In an Order of December 11, 2017 (ECF 3), I determined that the Complaint would proceed only as to Roberts and directed that if the other individuals sought to pursue their claims, each had to file his own complaint. *Id.* From that Order, Roberts filed an interlocutory appeal to the United States Court of Appeals for the Fourth Circuit. ECF 6. The Fourth Circuit dismissed the appeal on April 4, 2018, for failure to prosecute. ECF 17.

In the interim, defendants filed a motion for more definite statement. ECF 15. They requested the dates and names of the staff involved in the various alleged incidents. *Id.* Defendants asserted that without this information it would be nearly impossible to locate institutional records needed by them to respond. *Id.* I granted defendants' motion by Order of June 6, 2018. ECF 22. In particular, I directed Roberts to provide the date and/or time frame for each incident and claim referenced in his Complaint. *Id.* Roberts was also directed to include the name of each staff member he alleged was involved in each incident. *Id.*

Roberts subsequently moved to modify the Order. ECF 23. By Order of January 23, 2019, I granted that request in part and denied it in part. ECF 30. And, the parties have litigated other disputes, including plaintiff's motion for a temporary restraining order. *See, e.g.*, ECF 9; ECF 26; ECF 28; ECF 29; ECF 30; ECF 34; ECF 35; ECF 37; ECF 38.

Plaintiff filed a status report in June 2019. ECF 39. Defendants responded to plaintiff's status report and included a motion to dismiss in the submission, based on the claim that plaintiff did not adequately respond to ECF 15. *See* ECF 41.[2] Plaintiff did not respond to the motion to dismiss. However, no *Roseboro* notice had been sent to plaintiff. *See Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

Thereafter, nothing transpired in the case until April 30, 2020. At that time, I issued an Order (ECF 42) directing plaintiff to respond to ECF 15. Roberts responded to the Order on May 27, 2020 (ECF 43), indicating that he had, in fact, previously responded to defense counsel. *See id.* at 3. He claimed that, in an earlier communication to defense counsel, he provided dates for the events alleged in the Complaint and identified the officers responsible for the claim regarding denial of food. In particular, he named prison guards Amy Connors, Dorothy Bittinger, and Thomas Sawyers, and stated that defendants should be able to identify additional prison officials involved in the incidents based on the dates he provided. *Id.* at 4.

Connors, Bittinger, and Sawyers were not added as defendants. Nor have they been served.

### B. Factual Background

Roberts states that the institutional lockdown started "around August 8, 2013, and continued up until around Jan 9, 2014." ECF 1 at 4; ECF 43 at 3. During this time "the plaintiffs"[3] were deprived of medical treatment, showers, hygienic materials, and forced to

---

[2] Plaintiff disputes the contention that he had not responded to ECF 15.

[3] "Plaintiffs" refers to Roberts and the other individuals named as plaintiffs in the Complaint. ECF 1.

wash in the cell sink. ECF 1 at 5.  Showers were denied from "around Aug. 8, 2013, thru Sept. 2013."  ECF 1 at 5; ECF 43 at 3.  Plaintiffs were also deprived of disinfectant and cleaning supplies for cell cleaning, and for two months they were deprived of clean clothing and sheets and an opportunity to wash clothing.  ECF 1 at 5.  Hygienic and cleaning supplies were denied from "around Aug. 8, 2013 thru around Dec. 2013." ECF 43 at 3. Moreover, plaintiffs were fed cold meals that were nutritionally inadequate.  ECF 1 at 5. They were also deprived of library access, fresh air, and outdoor exercise for about eight months. Additionally, plaintiffs were denied access to school, attorney phone calls, family visits, and religious services. *Id*.  On five occasions, September 12, 14, 15, 20, 24, 2013, plaintiffs were denied bag meals when their cell windows were covered while using the toilet.  *Id*., ECF 43 at 3.

Defendant Shearin was the Warden when the alleged violations first occurred, and then he was replaced by defendant Bishop, who allegedly continued with the same practices until around March 2014.  Bishop implemented a "phase system" in Building 2, where Roberts was housed. The phase system limited movement, programs, and exercise. ECF 1 at 5.

As noted, defendants have submitted the Declaration of William Bohrer, dated March 19, 2015.[4]  He became Chief of Security for NBCI in September 2013. ECF 47-2, Bohrer Decl., ¶ 2.  Bohrer avers that on August 5, 2013, NBCI was placed on emergency institutional lockdown in response to the "unprovoked" attack and stabbing of a correctional officer multiple times by an inmate housed in general population. *Id*. ¶ 4. He asserts that since January 2013 "there had been many [other] incidents of assaults on staff in the months

---

[4] The Declaration was previously filed in *Previa v. Shearin, et al*., Civil Action No. ELH-14-2928 (ECF 15-2).

preceding the lockdown," including a severe head beating of a dietary officer on July 5, 2013, and several assaults on inmates by fellow inmates. *Id.*   According to Bohrer, the lockdown was implemented to ensure the safety and security of the institution. *Id*. ¶ 5.

Due to the lockdown, on August 13, 2013, NBCI implemented a shower schedule. *Id*. ¶ 6. Inmates were offered showers during the 7-3 shift and the 3-11 shift. Two inmates at a time, while handcuffed, were permitted out of their cells. According to the action plan implemented by Warden Shearin, the goal of the new shower schedule was for each inmate to receive a weekly shower and out-of-cell recreation.   Inmates confined in Housing Unit #2 received one shower per week from August 13, 2013, until November 4, 2013. Thereafter, they were provided showers twice a week. *Id.*

Out-of-cell recreation was also limited during the lockdown.   Out-of-cell activity resumed during the 7-3 and 3-11 shifts on September 9, 2013. *Id.* ¶ 9. But, when recreation was cancelled due to inclement weather it was not rescheduled. *Id.*

The resumption of out-of-cell activities was "balanced" against the institutional need to address "safety concerns" and to assure that activities "would not pose" a "danger to staff or inmates."  *Id.*; *see also id.* ¶ 11.   Resumption of out-of-cell activities was also delayed because the institution had to install additional safety features, such as fence dividers and slots on the recreation room doors and portal slots. *Id.* ¶ 9.

By October 22, 2013, the institution had increased activities. This included out-of-cell activities, showers, medical/dental passes, serving of one hot meal per day during the week, use of the telephone inside the recreation room, visitation in restraints during weekends in the visitor booth, requests for access to the housing unit library, access to Legal Assistance to

State Institution ("LASI"), legal video conferences, Inmate Grievance Office ("IGO") hearings, parole hearings, and limited resumption of inmate work assignments. *Id.* ¶ 10.

Shearin directed that the entire inmate population be assessed by an "interdisciplinary committee" with various roles and tasks at NBCI to plan for future operations and institutional safety. *Id.* ¶¶ 7, 8. The team was composed of staff from case management, custody, social work, and psychology. The classification team's recommendations were forwarded to the Assistant Warden and the Warden for final approval. *Id.* ¶ 7.

By October 22, 2013, the institution began assigning inmates "to specific housing unit wings." *Id.* ¶ 10. The objective was "to accelerate" the resumption of normal activities and to "assign approved inmates to work assignments." *Id.*

## II. Standard of Review

### A.

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435,

440 (4th Cir. 2011) (citations omitted); *see Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 423 (2018); *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 U.S. at 573; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)). But, the Supreme Court has explained that a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted; alteration in *Twombly*).

Moreover, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570); *see Paradise Wire & Cable Defined Benefit Pension Fund Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted); *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). Put another way, "an unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

A court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Comm'w of Va.*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in

the complaint." *Id*. at 563. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 135 S. Ct. 346, 346 (2014) (per curiam).

Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quotation marks and citation omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear [ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis in *Goodman*); *see Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . .." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways,* 510 F.3d 442, 450 (4th Cir. 2007). "Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents

attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Under limited circumstances, however, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb*, 791 F.3d at 508.

A court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166; *see also* Fed. R. Civ. P. 10(c); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Paradise Wire & Cable*, 918 F.3d at 318. Notably, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Goines*, 822 F.3d at 167. Therefore, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Id.* (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)).

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir.

2018); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, __U.S.__ , 138 S. Ct. 558 (2017); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (citation omitted); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Here, defendants argue that Robert's claims do not survive analysis under Rule 12(b)(6). Defendants provide a Declaration executed by the Chief of Security to support their position that the claims are barred by the statute of limitations.  ECF 47-2. These documents are not intrinsic to Robert's Complaint, however. Therefore, they may only be considered in the context of a motion for summary judgment.

## B.

As noted, the motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil

Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger* 510 F.3d at 450.  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

The Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery.  *See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt*, 721 F.3d 264, 281 (4th Cir. 2013).  When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur.  *See Moret v. Harvey*, 381 F.Supp.2d 458, 464 (D. Md. 2005).  Roberts was provided such notice by the defendants.  He also received notification from the Clerk of defendants' dispositive filing and the opportunity to reply with exhibits and declarations.  ECF 48.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 F. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports,* 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.,*

890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham,* 437 F. Supp. 2d 414, 420 (D. Md. 2006), aff'd, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Roberts has not filed an affidavit under Rule 56(d), nor has he filed a response to defendants' motion or requested discovery. Further, defendants have provided Roberts with a detailed

accounting of events and the timeline relevant to his claims through the Declaration of Chief of Security Bohrer. ECF 47-2. Thus, the Court is satisfied that it is appropriate to address defendants' Motion as one for summary judgment, as this will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017). To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.*,

841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002); *see Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Variety Stores, Inc.*, 888 F.3d at 659; *Gordon*, 890 F.3d at 470; *Roland v. United States Citizenship & Immigration Servs*., 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness

credibility. That said, "a party's 'self-serving opinion ... cannot, absent objective corroboration, defeat summary judgment.'" *CTB, Inc*., 954 F.3d at 658-59 (quoting *Williams v. Giant Food Inc.,* 370 F.3d 423, 433 (4th Cir. 2004)). In other words, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co*., 818 F.2d 1126, 1128 (4th Cir. 1987); *Harris v. Home Sales Co*., 499 F. App'x 285, 294 (4th Cir. 2012).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585–86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

### III.  Section 1983

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City*

*Police Dep't v. Owens*, 575 U.S. 983 (2015).  However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)); *see Safar v. Tinsley*, 859 F.3d 241, 245 (4th Cir. 2017).

In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).  But, to seek redress under § 1983, it is not enough merely to allege a violation of federal law; a violation of a federal right is required. *Carey v. Throwe*, 957 F.3d 468, 479 (4th Cir. 2020).

"The first step in any such claim is to pinpoint the specific right that has been infringed." *Safer*, 859 F.3d at 245.  To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019); *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Medical Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

The phrase "under color of state law" is an element that "'is synonymous with the more familiar state-action requirement—and the analysis for each is identical.'" *Davison*, 912 F.3d at 679 (quoting *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929 (1982)).  A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cty. v. Dodson*, 454 U.S.

312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips*, 572 F.3d at 181 ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.") (citations and internal quotation marks omitted).

Notably, § 1983 requires a showing of personal fault based upon a defendant's own conduct.  *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights).  In other words, there is no respondeat superior liability under § 1983.  *Ashcroft*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Therefore, liability based on respondeat superior does not apply to a § 1983 action.  *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)); *see Campbell v. Florian,* 972 F.3d 385, 398 (4th Cir. 2020).   With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1)  That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit

authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

## IV.  Discussion

Defendants Bishop and Shearin seek dismissal under Federal Rules of Civil Procedure 12(b)(6) or summary judgment under Rule 56.  They argue that (1) all of Robert's claims are barred by the statute of limitations; (2) defendants are entitled to qualified immunity; (3) defendants are entitled to Eleventh Amendment immunity; (4) defendants are not liable under respondeat superior; and (5) Roberts fails to state a constitutional claim.

## A.

In the caption of his Complaint, Roberts names "Prison Administration and other Subordinates" as defendants.  But, there are only vague and conclusory allegations in the Complaint pertaining to these individuals.  Roberts states that "Prison Administrators" were employed by NBCI in the ranks of Lieutenant to Captain and did "orchestrate, aid, participate or provide tacit support to all civil rights violations the plaintiffs were subjected to." ECF 1 at 4.  Further, Roberts states that "Subordinates" were also employed by the Department of Corrections, "some at NBCI and held the rank of Intel Gang Task/CIT, or C.O. II" and were "responsible for the shake-down of the dis-seg unit and other violations . . .." *Id.*   In his response to the Order for a more definite statement, Roberts identified the officers responsible for denying food as Officer Connors, Officer Bittinger, and Lieutenant (now Captain) Sawyers.  He states that defendants should be able to identify additional prison officials involved in the incidents based on the dates he provided.  ECF 43 at 4.

The individuals named in Roberts's response have not been served or entered an appearance in accordance with Fed. R. Civ. P. 4. Therefore, I shall dismiss the suit as to "Prison Administration and other Subordinates" under both Rule 4 and Rule 12(b)(6).

## B.

Defendants urge dismissal of the Complaint or summary judgment in their favor, based on the statute of limitations. Section 1983 does not contain a statute of limitations. Thus, to determine whether a § 1983 claim was timely filed, courts look to the statute of limitations from the most analogous state-law cause of action. *Owens*, 767 F.3d at 388; *see also* 42 U.S.C. § 1988(a) ("[I]n all cases where [the laws of the United States] are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies ... the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil ... cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause[.]").

A suit filed pursuant to 42 U.S.C. § 1983 constitutes a personal injury action. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). Under Maryland law, "[a] civil action shall be filed within three years from the date it accrues unless another provision of the Code provides" otherwise. Md. Code (2020 Repl. Vol.), § 5-101 of the Courts and Judicial Proceedings Article ("C.J.").

"Limitations statutes ... are designed to (1) provide adequate time for diligent plaintiffs to file suit, (2) grant repose to defendants when plaintiffs have tarried for an unreasonable period of time, and (3) serve society by promoting judicial economy." *Georgia-Pacific Corp. v. Benjamin*, 394 Md. 59, 85, 904 A.2d 511, 526 (2006); *see Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 665, 464 A.2d 1020, 1026 (1983). In Maryland, "[a]s a general rule, the party raising a

statute of limitations defense has the burden of proving that the cause of action accrued prior to the statutory time limit for filing the suit." *Newell v. Richards*, 323 Md. 717, 725, 594 A.2d 1152, 1156 (1991).

Although the Maryland statute of limitations applies, the matter of when a cause of action has accrued under § 1983 is a federal question. *Nassim v. Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc) (citing *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)); *see also McDonough v. Smith*, ––– U.S. ––––, 139 S. Ct. 2149, 2155 (2019). "An accrual analysis begins with identifying 'the specific constitutional right' alleged to have been infringed." *McDonough*, 139 S. Ct. at 2155 (quoting *Manuel v. Joliet*, ––– U.S. ––––, 137 S. Ct. 911, 920 (2017)).

A claim accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nassim*, 64 F.3d at 955 (citing *United States v. Kubrick*, 444 U.S. 111, 122-24 (1979)); *see Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020) (stating that a cause of action accrues when the plaintiff "has actual or constructive knowledge" of the claim). But, accrual cannot occur until the plaintiff has (or should have) "possession of the critical facts that he has been hurt and who has inflicted the injury." *Kubrick*, 444 U.S. at 122, 100 S.Ct. 352 (discussing discovery rule in the context of the Federal Tort Claims Act, which requires notice to the government "within two years after such claim accrues"); *see also Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 742 (4th Cir. 1990) (en banc) ("The clear import of *Kubrick* is that a claim accrues ... when the plaintiff knows or, in the exercise of due diligence, should have known both the existence and the cause of his injury."); *Gilbert v. United States*, 720 F.2d 372, 374 (4th Cir. 1983).

However, "the answer is not always so simple." *McDonough*, 139 S. Ct. at 2155. "Where, for example, a particular claim may not realistically be brought while a violation is ongoing, such a claim may accrue at a later date." *Id.*

Maryland law is largely consistent with federal law. Therefore, I shall look to both federal and Maryland cases concerning accrual.

As noted, under Maryland law, "[a] civil action shall be filed within three years from the date it accrues unless another provision of the Code provides" otherwise. C.J. § 5-101; *see Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 131, 31 A.3d 212, 236 (2011). Ordinarily, "'the question of accrual in § 5-101 is left to judicial determination,' unless the determination rests on the resolution of disputed facts regarding discovery of the wrong." *Poole*, 423 Md. at 131, 31 A.3d at 236 (citation omitted); *see Bank of N.Y. v. Sheff*, 382 Md. 235, 244, 854 A.2d 1269, 1275 (2004) (stating that summary judgment may be appropriate if there is no dispute of material fact as to whether plaintiff was on inquiry notice more than three years before suit was file); *Frederick Road Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95, 756 A.2d 963, 973 (2000) (explaining that the determination of accrual "may be based solely on law, solely on fact, or on a combination of law and fact, and is reached after careful consideration of the purpose of the statute and the facts to which it is applied").

Nevertheless, "[r]ecognizing the unfairness inherent in charging a plaintiff with slumbering on his rights where it was not reasonably possible to have obtained notice of the nature and cause of an injury," the so-called discovery rule is sometimes used to determine the date of accrual. *See Sheff*, 382 Md. at 244, 854 A.2d at 1275; *Frederick Road Ltd. P'ship*, 360 Md. at 95, 756 A.2d at 973. "The discovery rule acts to balance principles of fairness and judicial economy in those situations in which a diligent plaintiff may be unaware of an injury or harm

during the statutory period." *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 167, 857 A.2d 1095, 1104 (2004).

Under the discovery rule, "a plaintiff's cause of action accrues when the plaintiff knows or reasonably should have known of the wrong." *Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.,* 731 F. Supp. 2d 443, 449 (D. Md. 2010) (citing *Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 444, 749 A.2d 796, 801 (2000)), *aff'd*, 495 F. App'x 350 (4th Cir. 2012). Notably, "[t]his standard ... does not require actual knowledge on the part of the plaintiff, but may be satisfied if the plaintiff is on 'inquiry notice.' " *Dual Inc.*, 383 Md. at 167-68, 857 A.2d at 1104 (citing *Am. Gen. Assurance Co. v. Pappano*, 374 Md. 339, 351, 822 A.2d 1212, 1219 (2003); *Doe v. Archdiocese of Wash.*,114 Md. App. 169, 188-89, 689 A.2d 634, 644 (1997)).

A plaintiff is on inquiry notice when the plaintiff "possesses 'facts sufficient to cause a reasonable person to investigate further, and ... a diligent investigation would have revealed that the plaintiffs were victims of ... the alleged tort.'" *Dual Inc.*, 383 Md. at 168, 857 A.2d at 1104 (quoting *Pennwalt Corp. v. Nasios*, 314 Md. 433, 448-49, 550 A.2d 1155, 1159 (1988)) (alterations in original). Inquiry notice must be actual notice, either express or implied. *Poffenberger v. Risser*, 290 Md. 631, 637, 431 A.2d 677, 681 (1981).  In Maryland, "[c]onstructive notice or knowledge will not suffice for inquiry notice." *Benjamin*, 394 Md. at 89, 904 A.2d at 529; *see Poffenberger*, 290 Md. at 637, 431 A.2d at 681.

Roberts did not file a response to the Motion.  However, Roberts did file a verified Complaint, which "is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

Based on the parties' filings, they do not differ significantly on the timeline of events. Roberts alleges generally that events took place between July 2013 and March 2014. He states that beginning "around July 26 thru August 5, 2013" he and others were "strip searched at gun point, and under the threat of trained dogs by the defendants." ECF 1 at 4. Further, he alleges that the facility was placed on an institutional lockdown "around August 8, 2013, and continued up until around Jan 9, 2014." *Id.*; ECF 43 at 3-4. Further, Roberts states that Defendant Shearin was the Warden when these events initially took place and then he was replaced by Defendant Bishop, who continued with the same practices until around March 2014. ECF 1 at 5. Significantly, plaintiff sets forth no allegations regarding alleged misconduct, events, or incidents that took place after March 2014.

Defendants aver that the facility was placed on lockdown on August 5, 2013. ECF 47-2, Bohrer Decl., ¶ 4. They contend that NBCI implemented a limited shower schedule from August 13, 2013, until November 4, 2013. *Id.* ¶ 6. Thereafter, showers were provided twice a week. *Id.* Out-of-cell recreation was also limited, but resumed on September 9, 2013. *Id.* ¶ 9. By October 22, 2013, the institution had increased activities. *Id.* ¶ 10. Defendants construe the time frame for Roberts's allegations as taking place from approximately July 26, 2013, to January 9, 2014. ECF 47-1.

Viewing the facts in the light most favorable to Roberts, the claims he raises are based on events that took place as early as July 26, 2013, continuing through March 2014. Roberts's Complaint was received by this Court on August 11, 2017 (ECF 1). Although the Complaint was supposedly signed by Roberts on June 15, 2014 (ECF 1 at 12), the certificate of service attached to the Complaint indicates that the Clerk of Court was served with the

Complaint on August 6, 2017.  ECF 1 at 13.  With the Complaint, Roberts also filed a letter addressed to the Clerk of the Court, dated August 6, 2017.  ECF 1-1.  And, the motion for leave to proceed in forma pauperis is dated August 5, 2017.  ECF 2 at 4.

Applying the three-year statute of limitations to Roberts's § 1983 claims, defendants contend that all of Roberts's claims, which he alleges were sustained prior to August 11, 2014, are time barred based on the filing date for the Complaint of August 11, 2017.  ECF 47-1 at 6.

Plaintiff is entitled to have the "prisoner mailbox rule" applied to determine the filing date of his Complaint. Pursuant to the prisoner mailbox rule, the date of filing is not the date the Complaint was received by the court, but the date Roberts put the Complaint in the hands of prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 270 (1988) (a pro se litigant's legal papers are considered filed upon "delivery to prison authorities, not receipt by the clerk"); *see also Lewis v. Richmond Police Department*, 947 F.2d 733, 734-35 (4th Cir. 1991); *United States v. Dorsey*, 988 F. Supp. 917, 919-920 (D. Md. 1998).

 Roberts certified that the Complaint was served on the Clerk of Court on August 6, 2017.  ECF 1 at 13.  This constitutes delivery of the Complaint to prison authorities for mailing, and the Court deems the filing date of Roberts's Complaint to be August 6, 2017.  However, at the latest, Roberts's claims accrued in March 2014.  Therefore, at the latest, limitations expired in March 2017.  It is clear that Roberts filed his Complaint well after the expiration of the three-year statute of limitations.

Defendants' Motion will be granted on the basis that Roberts's claims are time barred.[5]

## VI.  Conclusion

For the foregoing reasons, the suit shall be dismissed as to defendants "Prison

---

[5] As a result, the Court need not address the remaining claims raised by defendants.

Administration and other Subordinates." The remaining claims are construed in the context of summary judgment and the Motion is granted in favor of Shearin and Bishop.

An Order follows.

Date:   October 27, 2020                              _____/s/_____
                                                     Ellen L. Hollander
                                                     United States District Judge

28